UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FRANK GILLIARD,

Plaintiff,

v.

THE CITY OF NEW YORK, et al.,

Defendants.

------------------------------x

New York, N.Y.

14 Civ. 4729(JPO)

April 21, 2016
9:58 a.m.

Before:

HON. DEBRA C. FREEMAN,

Magistrate Judge

APPEARANCES (Via speakerphone)

FRANK GILLIARD
Plaintiff Pro Se

NEW YORK CITY LAW DEPARTMENT
Attorneys for Defendants
BY: DANIEL G. SAAVEDRA
Assistant Corporation Counsel

Speakerphone Conference

(In chambers; call connected)

THE COURT: Good morning. This is Judge Freeman.

MR. SAAVEDRA: Good morning your Honor.

MR. GILLIARD: Good morning.

THE COURT: Good morning. I have plaintiff on the phone, Mr. Gilliard?

MR. GILLIARD: Yes.

THE COURT: OK. On defendants' side, who do I have?

MR. SAAVEDRA: Daniel Saavedra, your Honor, for the defendants.

THE COURT: OK, Mr. Saavedra. I had received a letter from Mr. Gilliard saying that he had not been able to obtain that trial transcript or the relevant portions of the trial transcript that he was looking for. Mr. Saavedra, did you see that letter? It was docket 84.

MR. SAAVEDRA: I did, and I am reading it now, your Honor.

THE COURT: So I did say in my prior order, which was from the end of February, Docket 76, I did say that if Mr. Gilliard ran into difficulties obtaining those trial minutes after making an effort, he should say so and I would consider whether I should direct the city to try to obtain them for him in discovery.

MR. SAAVEDRA: Yes, your Honor. If I may?

THE COURT: Sure.

MR. SAAVEDRA: I was looking over the discovery in the matter preparing for the conference yesterday, and I noticed that we had in our initial disclosures had provided a large number of transcripts from the criminal trial already to the plaintiff, and I was wondering if perhaps Mr. Gilliard did not have them and I could re-send them. But maybe those are the documents he's -- to my understanding, he has a large, at least it looks like close to 50 pages of transcripts from the trial already.

THE COURT: Do you know if you sent him the page -- hold on a second, Mr. Gilliard. Do you know, counsel, if you sent him the pages from the dates that he specified?

MR. SAAVEDRA: I'm confirming that now, your Honor. There is quite a voluminous file. I'm trying to find exactly where the date would be noted on these transcripts.

THE COURT: Yes. Mr. Gilliard.

MR. GILLIARD: Yes. The days that I need the transcript that he sent me from -- one is from February -- one is from February 27, 2013. That's with Mr. Class son. I'm trying to --

THE COURT: How do you spell that?

MR. GILLIARD: What?

THE COURT: How do you spell that name?

MR. GILLIARD: Classes, C-l-a-s-s-e-s.

THE COURT: Classes?

MR. GILLIARD: Yes, Classes.

THE COURT: OK.

MR. GILLIARD: That is from the defendant Classes. That's his testimony. And the other one is from -- I can't pronounce the name. It is T-o-m-p-k-i-n-s.

MR. SAAVEDRA: Your Honor, if I may?

THE COURT: Sure.

MR. SAAVEDRA: It appears that the transcripts are of -- and, again, I don't have the tapes, I can't find them -- but they are the direct and crosses of two police witnesses from Mr. Gilliard's trial, one a named defendant in this case and one a nonparty.

THE COURT: What are the two names?

MR. SAAVEDRA: Tompkins and Classes. Classes is a defendant in this lawsuit. And the transcripts are the direct and the cross-examinations of those individuals.

MR. GILLIARD: Excuse me, your Honor.

THE COURT: Yes.

MR. GILLIARD: Tompkins is the sergeant that was in the vehicle. That's the sergeant's name that I wanted, but they gave me another sergeant's name. I told that to --

MR. SAAVEDRA: Right. I did want to raise that with your Honor. During the deposition we uncovered that the sergeant identified wasn't the sergeant that the plaintiff was trying to sue.

THE COURT: OK. So we have two separate issues. One is whether one of the named defendants in this case should be dropped and another person added so that we have the right sergeant as a defendant in this case, and the second issue is whether the transcripts that were provided are all that Mr. Gilliard is looking for or whether there is other testimony by other officers, or anybody else, who plaintiff still feels he needs in connection with this case. So let's deal with the discovery issue first and then I'll circle back around to the pleading.

So, Mr. Gilliard -- am I pronouncing your name right, by the way?

MR. GILLIARD: Yes. You are pronouncing it right.

THE COURT: Gilliard, OK.

So, Mr. Gilliard, you had said the last time we spoke that you were looking for testimony by certain people at your trial for the statements that they made at the trial. Who are the witnesses or defendants -- who are the people whose testimony you are looking for?

MR. GILLIARD: The testimony I'm looking for is from the complainant, Jose Bravo.

THE COURT: Oh, the complainant?

MR. GILLIARD: Yes. I believe the date was the 14th or the 15th or the 19th, either one of those days he came and testified.

THE COURT: OK. Was that the only testimony you are looking for that you don't already have?

MR. GILLIARD: That's the only one I need. I got the other one and the correction of those Sergeant Tompkins -- Tompkins was the sergeant that was active on that day.

THE COURT: OK. But, first, just for the discovery issue of what testimony you're looking for, when you say in your letter, you mentioned Mr. Jose Bravo, he's --

MR. GILLIARD: Right.

THE COURT: -- the complaining witness against you in the criminal case and it's his testimony, direct and cross-examination, that you are looking for?

MR. GILLIARD: Right.

THE COURT: All right. So, Mr. Saavedra, on that, do you know if you have any more transcripts in your possession besides the ones that were provided?

MR. SAAVEDRA: No, your Honor. The ones that I provided were the ones that were in the Criminal Court file, and I had given Mr. Gilliard everything I have.

THE COURT: When you are talking about the Criminal Court file, what do you mean by that?

MR. SAAVEDRA: Whatever I could pick up from the Supreme Court. They keep those files that they disclosed to us. Sometimes transcripts are included.

THE COURT: And sometimes they are not?

MR. SAAVEDRA: And sometimes they are not, yes.

THE COURT: If they are not included, is there a way that you can get them?

MR. SAAVEDRA: Sure. Yes. We can definitely order the trial transcripts. I just -- the difficulty is determining -- and like Mr. Gilliard says, on numerous occasions -- this was a two-week trial -- there is difficulty determining what day the witness testified.

THE COURT: Well, there are two choices here. You can ask for the dates that the plaintiff has identified, March 14, 15 and 19, based on his belief that this witness testified on one of those days -- one or more of those days, or you can request the entire transcript because in case that's a mistaken recollection, it would save having to do it again.

MR. SAAVEDRA: Yes.

THE COURT: I'm thinking maybe getting the entire transcript wouldn't be a bad idea.

MR. SAAVEDRA: I see, your Honor. OK. We can certainly request that.

THE COURT: OK.

MR. SAAVEDRA: And provide the plaintiff, if that's what your Honor thinks we should do in this case.

THE COURT: Yes. It seems to me that that's reasonable.

Mr. Gilliard, if counsel gets the entire transcript,

do you want the entire transcript or do you want him just to send you that portion with that one witness?

MR. GILLIARD: I just need that one witness. I got everything else that he sent me so I only need --

THE COURT: That's all you need?

MR. GILLIARD: Just his testimony, that's all I need. But if he gets the whole thing, I'll accept it and I'll take out what I need.

THE COURT: Well, Mr. Saavedra, maybe you can make a request for the minutes of the direct and cross-examination of this one witness and you can say -- which might have been on these days, although that's not entirely certain, and maybe, if it has to be prepared or maybe there is a way that the court reporter, or whomever would have this, can just find that witness and provide that.

MR. SAAVEDRA: Perhaps, your Honor. I would certainly be able to look into that.

THE COURT: OK. So let's do it with a fallback plan. Try in the first instance just to request the testimony of Jose Bravo.

MR. SAAVEDRA: OK.

THE COURT: And then, you know, put in the request, if it is not possible, you know, simply to identify that portion of the transcript and produce just that portion, then request the entirety. But there is no need to have extra burden on

anyone who is providing this, or you in reviewing this, to do more than is being requested by plaintiff unless defendant independently wants to obtain this for some reason. OK?

MR. SAAVEDRA: Right. I agree, your Honor.

THE COURT: OK. Fine. So that's good. That deals with docket 84. I don't think that was showing as a motion on the docket so I don't think I need to do an order. If it was showing as an open application, then I'll write something on it quickly to indicate that you are going to be obtaining it. OK?

MR. SAAVEDRA: Understood.

THE COURT: All right. Now, let's go back to the pleading. How many defendants are named in the -- first of all, do we have an amended complaint already or is this an original complaint?

MR. SAAVEDRA: No, your Honor. Unfortunately, we have seven amended complaints.

THE COURT: Seven amended complaints?

MR. SAAVEDRA: Yes.

THE COURT: My memory failed me with respect to that.

And what's been the history of these amendments with respect to identification of defendants? Has this been an issue before?

MR. SAAVEDRA: Your Honor, it was --

THE COURT: There was John Does, right?

MR. SAAVEDRA: There was John Does. The number of

amended complaints doesn't reflect the number of new parties added, if that makes sense. I think it was just a streamlining of facts, and to be quite frank, a couple of more just repetitive and stating the same thing. But the identification issue is that we were trying to locate the desk sergeant on duty at the time of the incident.

THE COURT: The desk sergeant on duty?

MR. SAAVEDRA: Yes. So we identified that person. Unfortunately, it was not exactly who the plaintiff was trying to sue.

I will say that the right name, the name the plaintiff wants to now add, was disclosed in the initial disclosures. How he remembered that person was the right person. So Mr. Gilliard has been in possession of and has had access to the right name of the sergeant since initial disclosures were provided in this matter.

THE COURT: All right. The person who is the wrong person, is that Sergeant Lavecchia?

MR. SAAVEDRA: Yes.

MR. GILLIARD: Yes.

THE COURT: All right. So you want to drop Sergeant Lavecchia from the complaint?

MR. GILLIARD: That's correct and I want to put Tompkins in.

THE COURT: And I'll put Tompkins instead?

MR. GILLIARD: Right.

THE COURT: And Tompkins, of course, has never been served?

MR. SAAVEDRA: Yes.

MR. GILLIARD: Well, he was the sergeant on that day, and he was in the vehicle with Officer Classes.

THE COURT: All right. So, Mr. Saavedra, fill me in. The other amendments that have happened, have any of them been the results of motions for leave to amend or have they all just been without objection?

MR. SAAVEDRA: No, your Honor. We haven't opposed any of the amended complaints but they haven't been done with leave per se.

What I will say, your Honor, is I think it might be a superfluous amendment. The plaintiff -- and this is all in the deposition transcript, of course, testified to -- you know, being arrested by Officer Classes at upon the direction or order of this Sergeant Tompkins. The plaintiff was then taken to the precinct where the paperwork was done by an Officer Parris, who is another named defendant. I don't know what is added by adding the sergeant to the complaint.

The city's position is a very straightforward complaining victim case. It should be resolved on summary judgment. I don't think the addition of a sergeant who was simply present in the car is going to change the outcome of

that result. It also is a little late in the game to be adding new parties, if I may.

THE COURT: Mr. Gilliard, when did the events that you're complaining about in this case, when did they occur?

MR. GILLIARD: What?

THE COURT: When is the incident that you claim violated your rights?

MR. GILLIARD: The incident, October 2011, 26.

THE COURT: Well, at this point you may have a statute of limitations issue with respect to naming someone -- I mean, it's possible that you might be able to get around that if there was notice or maybe if there was mistake and, you know, there might be an argument. But just be aware, when you have a John Doe or if you name the wrong person, you don't necessarily get the benefit of a toll of the statute of limitations, which is presumably three years. So you may have an issue there.

Also, you know, the complaint would need to be amended again to name the correct person and it would have to be served on Sergeant Tompkins.

Is this sergeant still employed there?

MR. GILLIARD: No, he is not there any more. As of the --

THE COURT: Well, let me ask defense counsel. Is he still with the Department? Did he retire?

MR. SAAVEDRA: No, your Honor. He is a lieutenant now

with a different precinct.

THE COURT: I see. So would defendants object to this amendment at this time?

MR. SAAVEDRA: I --

THE COURT: Because if there is going to be an objection to the amendment or joinder -- I assume you wouldn't object to dropping somebody?

MR. SAAVEDRA: No.

THE COURT: Right. But if there is going to be an objection to adding another defendant, then I'm going to have to ask Mr. Gilliard to lay out why he believes this amendment should be permitted, you know, and a motion for leave to amend. It could be a simple one, but, still, and there can be an opposition and then I'm going to have to rule on that.

Hold on just one second. I'm just going to grab a copy of Rule 15.

MR. SAAVEDRA: Sure.

(Pause)

THE COURT: I mean, if you've got a statute of limitations problem, Mr. Gilliard, the rule provides that the amendment of a pleading can relate back to the date that you filed the original pleading, so you could get the benefit of that date, only in certain circumstances. You've got to have certain requirements satisfied under Rule 15(c), which provides that an amendment will relate back to that original date when

the law that provides the statute of limitations allows you to do that, allows relation back, the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out or attempted to be set out in the original pleading, or if the amendment changes the party, or the naming of the party, against whom a claim is asserted -- which is what we've got going here -- if there was notice, in other words, if Sergeant Tompkins or now Lieutenant Tompkins got notice of the action so that he wouldn't be prejudiced, and if he knew or should have known that the action would have been brought against him but for a mistake concerning the proper person's identity. So that may be a difficult standard but it's one that you might be able to argue because this would obviously arise out of the same facts. You might be able to argue based on your allegations that this individual, then Sergeant Tompkins, got notice of the action, wouldn't have been prejudiced, knew it would have been him except for a mistake that you made, you know, maybe/maybe not, but that's what you would have to be arguing if your claim would otherwise be futile under the statute of limitations. Because if the events took place in 2011, you know, by October of 2014 --

MR. GILLIARD: I didn't get all the police officers' names until 2015.

THE COURT: Well, that may or may not be enough. I mean, you did bring this case in June of 2014. So at that

point you would have been within three years. At this point, almost two years later, you are no longer within that three-year statute of limitations period for Section 1983 claims. So you would have -- you know, if the amendment would be futile, in other words, if the claim would be subject to dismissal on statute of limitations grounds, or on some other grounds, as soon as you brought it, then the amendment would not be allowed. If there is a possible argument that you can get around the statute of limitations' problem because the Sergeant would have had notice and he would have known he was the right person but for a mistake that you were making and if under the relevant case law you can meet that standard, you know, I can't say right now whether you can meet that or can't meet that, but that's what you would be having to show.

All right? Are you following me?

MR. GILLIARD: Yes, ma'am.

THE COURT: OK. So if defendant does not consent to the amendment, what you'll need to do is get to the Law Library and do some research about the concept of mistake and notice in this -- it is part of Rule 15 that talks about relation back, because you'll have a statute of limitations problem otherwise, it would seem to me. And I'm speaking a little bit off the cuff here. I don't have any motion papers in front of me. I don't have cases in front of me. I'm just trying to give you an idea of, you know, what you would need to show at this

point. And it may be difficult if you had the name previously and, you know, it took this much longer to say which person it should have been. Of course, you may not have had the name in the first place until after the statute ran so I'm not sure how that all plays out.

Mr. Saavedra, though, I think you should --

MR. SAAVEDRA: Your Honor, if I could --

THE COURT: -- think about it and take it back and decide what you want to do.

MR. SAAVEDRA: Understood. And I do agree with your Honor, it is a substantive situation. The thing that makes me hesitate is I really -- the thing that makes me not want to oppose an amendment is that I think this case is ripe for summary judgment and prolonging it with motion practice on an amendment would just really delay the outcome of the matter.

THE COURT: Well, here's my only concern about this. You know, if you're wrong with respect to summary judgment about the sergeant --

MR. SAAVEDRA: Mm-hmm.

THE COURT: -- then -- or anything else, but let's just focus on the sergeant, then there's that much more delay by plaintiff in trying to get the right person named. I don't want him to be prejudiced by that, to the extent that matters. It might make sense, if you are going to object, to let plaintiff at least make his motion to amend and have that

pending so that, you know, that will be there -- you know, maybe even have it decided quickly. If there is a motion for summary judgment and you move against a pleading that gets amended, then your motion doesn't make a lot of sense.

I'm thinking out loud. Is that the logical order of things?

MR. SAAVEDRA: I appreciate it.

THE COURT: Maybe the thing to do -- I mean, I want to give you an opportunity to consult with your clients and to decide whether you want to oppose it or not, but maybe the thing to do is just allow the amendment and it will be there on the docket and maybe even before it's served, while service is, you know, underway, if you think discovery is otherwise done and you've got a motion, you know, make it as it gets the correctly named defendant and then, you know, you can throw right in there any other issues that you have about that defendant.

MR. SAAVEDRA: Yes. That might be the best solution. I agree with your Honor. I would appreciate the chance to confer with supervisors and my clients, however.

THE COURT: OK. What discovery remains at this point?

MR. SAAVEDRA: None, your Honor, from our perspective.

THE COURT: And on plaintiff's side, the only thing you are still looking for is this testimony by Mr. Bravo?

MR. GILLIARD: Yes.

THE COURT: There is no other discovery you feel you need?

MR. GILLIARD: No, no other.

THE COURT: All right. My only concern, then, is if I set a schedule for summary judgment and you haven't gotten that transcript yet, Mr. Gilliard feels he needs it to oppose summary judgment in some way, then the motion will have been premature.

MR. SAAVEDRA: Right. I will say, your Honor, typically it takes 30 days to get the transcripts from the state courts.

THE COURT: I think I only had this case referred to me for general pretrial supervision. I don't think I have this for dispositive motions -- for a report and recommendation on a dispositive motion. I think it's just to supervise the case in discovery, which, I'll add, by the way, includes if I can help with settlement. Given that you are pretty much poised and ready to move for summary judgment, do I take that to mean that you are not interested in settlement or might there be an interest?

MR. SAAVEDRA: Your Honor, I made Mr. Gilliard an offer. However, Mr. Gilliard has a number of cases that him and I are litigating and we are trying to settle them all --

THE COURT: Oh, how many of them --

MR. SAAVEDRA: -- so that there is a hindrance.

THE COURT: How many of them are being litigated in this court?

MR. SAAVEDRA: I believe there is one other one in front of Judge Torres.

THE COURT: What's being litigated in any other court?

MR. SAAVEDRA: No. That's it, your Honor, these two cases.

THE COURT: You are trying to settle two cases simultaneously?

MR. SAAVEDRA: Right.

THE COURT: Mr. Gilliard --

MR. SAAVEDRA: I'll rephrase, your Honor. I only have authority to settle both cases at the same time. I don't have authority to only settle one.

THE COURT: Well, is there a magistrate judge assigned on the case before Judge Torres?

MR. SAAVEDRA: Judge Gorenstein is the magistrate, your Honor.

THE COURT: Has he talked to the parties about settlement in that case?

MR. SAAVEDRA: No. That case is further -- or less far along.

THE COURT: Is it referred to him?

MR. SAAVEDRA: I believe so, your Honor.

THE COURT: Well, I'm sure neither Judge Torres nor

Judge Gorenstein would mind if settlement discussions were had that dealt with both cases and managed to resolve both cases.

MR. SAAVEDRA: I agree, your Honor. I just meant that we would be happy to do that, but I've cited Mr. Gilliard my full authority and he has rejected it, so I'm not sure that it would be beneficial at this point.

THE COURT: All right. Just so you know, we have a court reporter here, as we do for all of these conferences. So I want to talk to you a little bit about the settlement numbers. If anybody obtains a copy of this transcript and files it for any reason, that part should be redacted and separately placed under seal.

MR. SAAVEDRA: Understood, your Honor.

THE COURT: Because settlement discussions don't have to be part of the public record, but we're going to keep the court reporter going. Because the case is a *pro se* case, I always would have a record, even if it is a sealed one.

MR. SAAVEDRA: Understood, your Honor. And I had provided Mr. Gilliard and I hope he has received all of the transcripts of our previous conferences.

MR. GILLIARD: I just got them two days ago.

THE COURT: OK. I would love it if you would do the same for this one. That would be nice.

MR. SAAVEDRA: Of course.

THE COURT: So what kind of demand and offer are we

talking about here for these two cases?

MR. SAAVEDRA: Well, your Honor, if I may? The plaintiff has been treating two cases separately in terms of settlement. I believe the last offer he made regarding this matter -- and, Mr. Gilliard, please feel to correct me as I'm working off memory -- was in the neighborhood of 4,000. I offered, and as I mentioned to the Court, my full extent was a thousand dollars to settle both matters -- which are in all actuality very similar allegations -- a thousand dollars to settle both matters. Mr. Gilliard rejected the offer, and since then we haven't had much settlement negotiations.

THE COURT: I'm sorry. The 4,000 was the amount being sought on one case?

MR. SAAVEDRA: Yes.

MR. GILLIARD: That's for the --

THE COURT: I'm sorry?

MR. GILLIARD: That's for the May case.

THE COURT: The May case is the case before Judge Torres?

MR. GILLIARD: Yes. That's the one I tried to settle for 4,000.

THE COURT: And did you have a settlement demand in the other case, the one before me?

MR. GILLIARD: No. This one right here? No. He said something at the video conference that he wanted to settle both

cases for a thousand dollars, and I refused it because for this case I was locked up for 17 months, not getting my treatments and nothing for my hives and all of that and I lost a lot of things so I denied it.

THE COURT: What were the circumstances of the other case?

MR. GILLIARD: The other case was similar, the same. I was stopped in front of my building, in front of 225, and I got arrested. I got locked up at 3 o'clock, which the report said they locked me up at 7 o'clock, so for four hours I was in the precinct. And then he took me to another precinct for a lineup and then I went to Central Booking and everything, and I went to the Grand Jury and all the charges was thrown out.

THE COURT: So both cases you say were arrested without probable cause?

MR. GILLIARD: Without probable cause.

THE COURT: And in both cases there was a complaining witness?

MR. SAAVEDRA: Yes, your Honor. In both cases the complaining victim, both cases accusing Mr. Gilliard of forcibly stealing their cell phones.

THE COURT: The same witness or a different witness?

MR. SAAVEDRA: Different witnesses.

THE COURT: So two different people on two different occasions complained that Mr. Gilliard had stolen cell phones?

MR. SAAVEDRA: Yes.

THE COURT: In the same location?

MR. SAAVEDRA: One was -- generally in the Bronx. I would say in the 40th Precinct is the location.

THE COURT: And both witnesses identified Mr. Gilliard?

MR. SAAVEDRA: Yes, your Honor. One was a lineup and one was a stop -- a point. I forget the law enforcement term but just he pointed --

THE COURT: A showup?

MR. SAAVEDRA: -- out Mr. Gilliard. Yes, a showup. Yes.

THE COURT: And both charges were eventually dismissed without it proceeding to trial?

MR. SAAVEDRA: No. The current case that we're handling resulted in a two-week trial and the plaintiff was acquitted at trial.

MR. GILLIARD: This one, the one that we are having right now, took 17 months to go to trial.

THE COURT: And there was a grand jury indictment on the one --

MR. SAAVEDRA: In both cases, your Honor.

THE COURT: Both cases had grand jury indictments?

MR. GILLIARD: The first -- the second one is no grand jury indictment. The grand jury threw it out, I'm almost

positive.

MR. SAAVEDRA: I'm sorry, your Honor. He may be right. That case is earlier along.

THE COURT: The one in May, the Grand Jury through it out?

MR. GILLIARD: The Grand Jury threw it out.

MR. SAAVEDRA: No, your Honor. I'm sorry. Mr. Gilliard is incorrect. I'm staring at the True Bill signed by the Foreman.

MR. GILLIARD: The Grand Jury threw it out, the one in May.

MR. SAAVEDRA: I'm sorry, Mr. Gilliard. This is not true.

THE COURT: Well, if there was a --

MR. SAAVEDRA: Oh, I'm sorry. I'm sorry. I'm mistaken. I'm reading the wrong document. Mr. Gilliard is correct. The Grand Jury did not find a true bill in that other case.

THE COURT: OK. So one was indicted and one was not?

MR. SAAVEDRA: Right.

THE COURT: The one in front of me was the one that was indicted?

MR. SAAVEDRA: Yes, your Honor.

THE COURT: So, Mr. Gilliard, usually the law is that if the Grand Jury has found probable cause -- that's what the

Grand Jury is charged with figuring out, is there probable cause such that the person should stand trial -- then usually an argument that there was no probable cause for the arrest doesn't go that far because you've got a Grand Jury looking at it and deciding that there was probable cause. What is it about this case that makes you think that you still a good constitutional claim?

MR. GILLIARD: Because I was found not guilty. I went to trial (inaudible) --

THE COURT: Start again. The court reporter couldn't hear you.

MR. GILLIARD: OK. I stayed in jail for 17 months. I went to trial. The witness couldn't identify me at trial. He didn't make -- and he got robbed on the 23rd. He got robbed on the 23rd and they locked me up on the 26th, three days later, and they didn't do a proper investigation on that. It was just like a black male with braids in his hair. And they came around the corner and they picked the first black male up and they locked me up.

THE COURT: So, Mr. Saavedra, if you do a summary judgment motion on this case, the basis of the motion is what?

MR. SAAVEDRA: The basis is that there was a complaining victim. I have the paperwork. We also have the Grand Jury Indictment and we'll soon have the trial transcript, I suppose, of him testifying at court. Not that it matters, I

suppose, but --

THE COURT: No, I don't think the trial transcript is going to matter because --

MR. SAAVEDRA: Yes.

THE COURT: -- the question is whether there was probable cause at the time, not what somebody remembers later.

MR. SAAVEDRA: Right. Honestly, that's the way we see the case, your Honor. I tried to explain as much to Mr. Gilliard but, unfortunately, we couldn't come to an agreement.

THE COURT: Mr. Gilliard, the thing is that when the evidence gets presented to a Grand Jury and the Grand Jury decides to indict, it means the Grand Jury has determined that there was probable cause to have you held in custody and go to trial. So it becomes more difficult to say that there was no probable cause and that it was a constitutionally deficient arrest. So I don't know how successful this will be.

Again, I don't have any papers in front of me. I'm not reading anybody's legal argument, but for settlement purposes, you may have some real obstacles here on this case in front of me. You may have one fewer obstacle with respect to the other case if the Grand Jury refused to indict. But, again, if you've got a complaining witness who identifies you, the police may not need much more than that unless there is reason for them to believe that it's not a valid identification

or not a valid complaint.

So I just want to caution you that even if you were arrested unjustly both times, meaning that you were innocent of these crimes and the police, you know, were hasty, legally you may have some difficulty with both of the cases. It may not be that easy for you to get where you want to the go with them. So for settlement purposes think about that.

I don't know if the city could possibly come up with more authority. I understand the thousand dollars on both cases is the limit of the city's authority at this time, but, you know, if you countered and said I would settle both cases for and you came up with many some amount of money they knew would do it to settle both cases, you know, they might possibly come up with some more. I don't know, but I could try to help with that process a little bit.

Can you at least give some thought to what you would take to resolve both cases and see if you might want to make a demand for the two of them rolled up together?

MR. GILLIARD: Yes, ma'am.

THE COURT: OK. Be aware of it, even if you had a terrible experience and were held, you know, without it being your fault for a lengthy period of time, it doesn't necessarily translate legally to a constitutional violation. OK? You've still got to look at that law and figure out if you are going to be able to get past the obstacles that you have. All right?

MR. GILLIARD: Yes, ma'am.

THE COURT: OK. So I have another call that's waiting for me. I'm running a little bit late. I've got somebody else at another facility, a second *pro se* prisoner call of the day. So I've got to bring this one to an end.

So if you could promptly request that testimony?

MR. SAAVEDRA: Yes, your Honor.

THE COURT: OK. And then if you could also write to the Court, with a copy to Mr. Gilliard, within a couple of days, make a decision on whether you will oppose a motion to amend or not.

MR. SAAVEDRA: OK.

THE COURT: All right. If you are not going to oppose it, then, Mr. Gilliard, I am going to give you a pretty short deadline to get in yet another pleading that's the same as what you've got now that would just switch out the name of the defendant.

MR. GILLIARD: Right.

THE COURT: The Sergeant. I wouldn't expect there to be other changes. OK?

And then I would also ask the city the same time you are telling me whether you don't oppose it, if you are not opposing it, to get me the information as to how this person may be served.

MR. SAAVEDRA: Understood, your Honor.

THE COURT: So that we can get the information to the Marshal Service and they can serve this defendant. I've got to get all of that moving.

MR. SAAVEDRA: Right.

THE COURT: Right. I'll set a schedule for all of these things based on what I see coming in and your letter.

MR. SAAVEDRA: OK.

THE COURT: All right. And then I'll talk to Judge Oetken as to whether he would want me to set a summary judgment briefing scheduling or whether he would like you to reach out to him --

MR. SAAVEDRA: Understood, your Honor.

THE COURT: -- for that. OK. But I'm not going to schedule another conference right now. Let's see. I'm going to look for a letter within two business days about whether or not there will be an opposition to a motion to amend. And, you know, please confirm in that letter that you've requested this transcript, too, so I know that's in the works.

MR. SAAVEDRA: OK.

THE COURT: All right. And then I'll take it from there.

MR. GILLIARD: Should I make an amendment?

THE COURT: No. Don't do it yet. Sit tight. Because I am going to wait and see if there is going to be an objection. If there is not going to be an objection, I will

issue an order saying just get your amended complaint in by a certain day. If there is going to be an objection, then I will set a scheduled for a motion to amend. OK?

MR. GILLIARD: OK.

THE COURT: And I'll lay out what needs to happen on that.

MR. GILLIARD: OK.

THE COURT: All right. So sit tight and watch for an order from me. All right?

MR. GILLIARD: OK.

THE COURT: OK. I think we'll be in business if you wait for me to issue an order after I get a letter from the city. OK?

MR. GILLIARD: OK.

THE COURT: All right. Thank you both.

MR. SAAVEDRA: Thank you, Judge.

THE COURT: All right. Bye-bye.

(Call disconnected)

- - -